ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY<br><br>　　　　　　Plaintiff,<br>　v.<br><br>BUREAU OF LAND MANAGEMENT, *et al*.,<br><br>　　　　　　Defendants. | Case No. 3:24-cv-00282-SLG |
| STATE OF ALASKA<br><br>　　　　　Plaintiff,<br>　v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al*.,<br><br>　　　　　Defendants. | Case No. 3:25-cv-00003-SLG |

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into by and between Plaintiffs Alaska Industrial Development and Export Authority (AIDEA) and the State of Alaska (State); and Defendants United States Bureau of Land Management (BLM), United States Department of the Interior (Department), Doug Burgum, in his official capacity as Secretary of the Interior, Katharine MacGregor, in her official capacity as Deputy Secretary,[1] William Groffy, in his official capacity as Acting Director of the Bureau of Land Management, Kevin J. Pendergast, in his official capacity as State Director of the Bureau of Land Management Alaska Office; (collectively, the Parties), who, by and through their undersigned counsel, state as follows:

WHEREAS, Congress long recognized the immense potential for oil and gas development on the Coastal Plain of the Arctic National Wildlife Refuge (ANWR) and in the 1980 Alaska National Interest Lands Conservation Act (ANILCA), § 1002, Public Law (PL) 96-487, 16 U.S.C. § 3142, among other direction to the Secretary, authorized exploratory activity, defined as "surface geological exploration or seismic exploration, or both, for oil and gas" within the entire 1.56 million Coastal Plain area;

WHEREAS, on December 22, 2017, after decades of Congressional consideration regarding whether oil and gas development should take place on any area of the 1.56 million-acre Coastal Plain within the 19.3 million-acre ANWR, *see* 16 U.S.C. § 3142,

---

[1]      Pursuant to Fed. R. Civ. P. 25(d), the named individuals, in their official capacity serving in their respective positions, are automatically substituted for their predecessors in office.

Congress enacted Section 20001 of the Tax Cuts and Jobs Act, Public Law (PL) 115-97 (2017 Tax Act), which provided explicit instructions with regards to leasing in the Coastal Plain, addressed in the recitals that follow;

WHEREAS, Section 20001(b)(2)(A) states the "Secretary [of the Interior] shall establish and administer a competitive oil and gas program for the leasing, development, production, and transportation of oil and gas in and from the Coastal Plain";

WHEREAS, Section 20001(b)(2)(B) amended ANILCA to expressly add to the purposes of ANWR "to provide for an oil and gas program on the Coastal Plain."

WHEREAS, Section 20001(b)(3) states "the Secretary shall manage the oil and gas program in a manner similar to the administration of lease sales under the Naval Petroleum Reserves Production Act of 1976 (Production Act) (42 U.S.C. 6501 et seq.)";

WHEREAS, Section 20001(c)(1) states "the Secretary shall conduct not fewer than 2 lease sales area-wide" for the Coastal Plain oil and gas program, one within four years of the Act and one within seven years of the Act and that "the Secretary shall offer for lease . . . not fewer than 400,000 acres area-wide in each lease sale[] and . . . those areas that have the highest potential for the discovery of hydrocarbons";

WHEREAS, Section 20001(c)(2) provides "the Secretary shall authorize up to 2,000 surface acres of Federal land on the Coastal Plain to be covered by production and support facilities (including airstrips and any area covered by gravel berms or piers for support of pipelines) during the term of the leases under the oil and gas program under this section";

WHEREAS, Section 20001(b)(5) requires that, from all bonus, rental, and royalty receipts from the Coastal Plain leases, "50 percent shall be paid to the State of Alaska";

WHEREAS, in September 2019, BLM released the Coastal Plain Oil and Gas Leasing Program Final Environmental Impact Statement (EIS), which analyzed the No Action Alternative (Alternative A) and three action alternatives including Alternatives B, C, and D (which was analyzed as two sub-alternatives, D1 and D2);

WHEREAS, in August 2020, BLM issued a Record of Decision (ROD) approving an oil and gas leasing program to implement the 2017 Tax Act by selecting EIS Alternative B which made the entire 1.56 million acres of the program area available for lease and permitted 2,000 acres of surface development;

WHEREAS, in January 2021, BLM held the first lease sale for the Coastal Plain oil and gas leasing program, which offered twenty-one tracts covering approximately 1.09 million acres for leasing;

WHEREAS, BLM ultimately issued leases on nine tracts covering approximately 552,000 acres as a result of this 2021 sale, seven of which were issued to AIDEA and one each to Knik Arm Services, LLC, and Regenerate Alaska, Inc.;

WHEREAS, despite the existing Congressional mandate for oil and gas leasing and surface authorizations, on January 20, 2021, Executive Order (EO) 13990 – Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis was issued and directed a temporary moratorium on all activities relating to the implementation of the Coastal Plain Oil and Gas Leasing Program and also a

comprehensive analysis of the potential environmental impacts of the program (this EO was later revoked on January 20, 2025, via EO 14148);

WHEREAS, EO 13990 led to the issuance of Secretary's Order (SO) 3401 on June 1, 2021, which placed a temporary pause on all leasing program activities and ordered the development of a Supplemental EIS (this SO was later revoked in February 2025 via SO 3422); that same day, the Department suspended all the Coastal Plain leases;

WHEREAS, in 2022, following BLM actions for indefinite suspensions, BLM in agreements with Knik Arm Services, LLC and Regenerate Alaska, Inc., holding one lease each, entered into separate agreements with BLM whereby their leases were cancelled and rescinded and their lease payments were refunded;

WHEREAS, in 2023, on the same date that the Draft SEIS was issued, BLM unilaterally cancelled AIDEA's seven leases, which cancellation was subsequently ruled to have been unlawful and so was vacated. *AIDEA v. U.S. Dep't of the Interior,* No. 3:24-cv-00051-SLG (D. Alaska), Dkt. 95;

WHEREAS, the State was not consulted on these suspensions, cancellations, and refunds;

WHEREAS, in November 2024, BLM completed the Coastal Plain Oil and Gas Leasing Program Supplemental Environmental Impact Statement (SEIS), which included an updated range of alternatives and analyzed the No Action Alternative: Alternative A and action alternatives: Alternatives B, C, D, and D2 (Alternative D2 from the 2019 EIS and the 2024 SEIS are separate and distinct);

WHEREAS, the State, despite its status as a cooperating agency, was not provided with a preliminary Final SEIS before BLM published the SEIS and included the entirely new and most restrictive Alternative D2;

WHEREAS, in December 2024, BLM issued a ROD selecting Alternative D2 from the SEIS to govern the BLM's perspective on leasing activities in the Coastal Plain Oil and Gas Leasing Program;

WHEREAS, the Alternative D2, selected in the 2024 ROD, closed 1,163,500 mineral acres of the program area to leasing, leaving only approximately 400,000 mineral acres available for leasing;

WHEREAS, the Alternative D2, selected in the 2024 ROD in the limited area available for leasing, proposed to either prohibit or severely constrain surface use. The surface of fifty-eight percent (231,700 acres) of the area available for leasing would be subject to non-surface occupancy (NSO) stipulations that prohibit the construction of surface oil and gas facilities. Additionally, the surface of twenty-one percent (84,300 acres) of the area available for leasing would be subject to controlled surface use stipulations, which allow only some use and occupancy of public lands. The surface of another 3,100 acres of the area available for leasing would be subject to timing limitations, which close areas to fluid mineral exploration and development, surface-disturbing activities, and intensive human activity during identified time frames;

WHEREAS, as a result of these stringent NSO, controlled surface use, and timing limitation stipulations across nearly all of the Coastal Plain, the BLM estimated that the

total surface disturbance under Alternative D2 would be only 995 acres—even though the 2017 Tax Act requires the Secretary to authorize up to 2,000 surface areas of federal land on the Coastal Plain to be covered by production and support facilities;

WHEREAS, BLM did not consider the constraints on current drilling technology to target and develop all areas subject to NSO, controlled surface use, or timing limitations, effectively rendering many areas inaccessible for development utilizing modern drilling techniques. These limitations rendered areas technologically unavailable for development despite being nominally designated as available under Alternative D2;

WHEREAS, the 400,000 acres available for leasing under the 2024 ROD included the same land that had been successfully leased by AIDEA, Knik Arm Services, LLC, and Regenerate Alaska, Inc. during the first lease sale for the Coastal Plain;

WHEREAS, in January 2025, BLM purported to hold the second lease sale for the Coastal Plain oil and gas leasing program, which offered portions of eleven tracts available for leasing with the same severe limitations on surface use described above; no bids were received;

WHEREAS, on December 20, 2024, AIDEA filed its complaint in the United States District Court for the District of Alaska in Case No. 24-cv-282-SLG alleging the 2024 SEIS and 2024 ROD violate the 2017 Tax Act, ANILCA, the National Environmental Policy Act (NEPA), and the Administrative Procedure Act (APA);

WHEREAS, on January 6, 2025, the State of Alaska filed its complaint in the United States District Court for the District of Alaska in Case No. 25-cv-3-SLG alleging

the 2024 SEIS, 2024 ROD, and 2024 Lease Sale Notice violate the 2017 Tax Act, ANILCA, the Production Act, NEPA, and the APA;

WHEREAS, on January 20, 2025, President Trump issued Executive Order (EO) 14153, titled *Unleashing Alaska's Extraordinary Resource Potential*, 90 Fed. Reg. 8,347 (January 29, 2025), Section 3 of which directs heads of agencies to "exercise all lawful authority and discretion available to them" to take certain steps, including placing a "temporary moratorium" on, and conducting "review" of, the challenged 2024 ROD, and ultimately replacing the 2024 ROD;

WHEREAS, on February 3, 2025, Secretary Burgum issued Secretary's Order (SO) 3422, also titled *Unleashing Alaska's Extraordinary Resource Potential*, Section 6(a) of which directs agency officials to prepare, within 15 days of the issuance of the Order, an "action plan" that will describe "necessary and appropriate steps to execute" the above-described direction regarding the 2024 ROD;

WHEREAS, on March 20, 2025, the Department of the Interior announced initial actions to implement EO 14153 and SO 3422, including taking steps to reinstate a program that makes the entire 1.56-million-acre ANWR Coastal Plain available for oil and gas leasing. In contrast to the 2024 ROD, this program would fulfill Congress's mandate in the 2017 Tax Cuts and Jobs Act;

WHEREAS, on July 4, 2025, Section 50104 of Public Law (PL) 119-21, commonly known as the "One Big Beautiful Bill Act," was enacted, which reaffirms the direction in PL 115-97 related to the Coastal Plain Oil and Gas Leasing Program, directs

the offering of leases under this program to include the terms and conditions from the 2020 ROD, and requires the Secretary to conduct not fewer than four additional lease sales, each offering for lease not fewer than 400,000 acres area-wide in those areas that have the highest potential for the discovery of hydrocarbons, at intervals of not later than one year, three years, five years, and seven years after the date of enactment;

WHEREAS, on October 23, 2025, the Department of the Interior signed a new record of decision, reinstating a program that makes the entire 1.56-million-acre ANWR Coastal Plain available for oil and gas leasing and fulfilling Congress's mandates in the 2017 Tax Cuts and Jobs Act;

WHEREAS, on December 11, 2025, the President signed Public Law 119-52, a Joint Resolution providing for congressional disapproval of the 2024 ROD under the Congressional Review Act, 5 U.S.C. §§ 801-808;

WHEREAS, the Parties have explored options for resolving the disputes underlying this litigation, and have determined that this Agreement resolves those disputes, while conserving the resources of the Parties and the Court.

NOW, THEREFORE, the Parties hereby stipulate and agree as follows:

1. BLM agrees and admits that the 2024 ROD violated the 2017 Tax Act by preventing meaningful leasing, exploration, and development of oil and gas on the Coastal Plain, as Congress mandated, in at least the following ways:

(a) First, the 2024 ROD failed to make available the statutory minimum acreage for two lease sales. Section 20001(c)(1)(B)(i) of the 2017 Tax Act states the

"Secretary shall offer . . . not fewer than 400,000 acres area-wide in each lease sale." The 2024 ROD only permitted leasing of 400,000 acres total, and the lands authorized for lease were the same lands on which the purportedly suspended and cancelled leases were issued in 2021. The 2024 ROD's authorization for those lands was insufficient to support 400,000 acres per lease sale for the at least two area-wide lease sales.

(b) Second, the 2024 ROD closed to leasing and development nearly 1.2 million acres of the Coastal Plain and deterred development on the remaining lands in violation of Congressional direction. Section 20001(b)(2)(A) states the "Secretary shall establish and administer a competitive oil and gas program for the leasing, development, production, and transportation of oil and gas in and from the Coastal Plain." By preventing leasing and development in nearly seventy-five percent of the Coastal Plain and deterring leasing and development on the remaining twenty-five percent by making it impossible or impracticable to develop by significantly restricting surface use and occupancy, the 2024 ROD frustrated the purpose of Section 20001 in violation of Congressional direction and severely limited the "competitive" direction required in the law, which was demonstrated by failing to attract any bidders by the January 6, 2025, deadline for the lease sale held under the 2024 ROD.

(c) Third, the 2024 ROD improperly limited seismic exploration on the Coastal Plain to the 400,000-acre portion made available for leasing. Section 20001(c)(1)(B)(i) (see 1(a) above), Section 20001(b)(2)(A) (see 1(b) above), Section 20001(b)(3), and Section 20001(c)(2) ("The Secretary shall issue any rights-of-way or

easements across the Coastal Plain for the *exploration*, development, production, or transportation necessary to carry out this section." (emphasis added)), read together, demonstrate Congressional recognition that exploration activities are an integral part of the oil and gas leasing program expected to minimally involve 800,000 acres across the first two required lease sales and that exploration activities were expected to precede development, production, and transportation, similar to the oil and gas leasing program under the Naval Petroleum Reserves Production Act of 1976 (42 U.S.C. 6501 et seq.). By prohibiting exploration on all but 400,000 acres of the Coastal Plain, the 2024 ROD violated the Section 20001 of the 2017 Tax Act.

(d) Fourth, the 2024 ROD erroneously interpreted the 2,000-acre provision in Section 20001(c)(3), which provides "the Secretary shall authorize up to 2,000 surface acres of Federal land on the Coastal Plain to be covered by production and support facilities." The 2017 Tax Act does not authorize BLM to deny or unreasonably limit development of production and support facilities to the Coastal Plain until 2,000 surface acres are covered by production and support facilities. To the extent the 2024 ROD states or implies that BLM may deny or unreasonably limit surface development to less than 2,000 acres, that interpretation violates the 2017 Tax Act. Further, the 2017 Tax Act allows that, when federal land formerly containing production and support facilities is reclaimed, additional acreage may be subject to the 2,000-acre provision. To the extent that the 2024 ROD states or implies otherwise, that interpretation violates Section 20001 of the 2017 Tax Act.

2.    Unless authorized by law enacted after the date of this agreement, BLM agrees not to issue a new ROD with any of the deficiencies identified in the preceding paragraph.

3.    In exchange for the consideration set forth herein, Plaintiffs agree to dismiss their Complaints in Case Nos. 24-cv-282-SLG and 25-cv-3-SLG and all claims therein without prejudice. Within five days of the execution of this Agreement, pursuant to Fed. R. Civ. P. Rule 41(a)(2), the Parties agree to submit a stipulation of dismissal without prejudice, along with a copy of this Agreement.

4.    Except as provided in paragraph 1 and this paragraph, in no event shall any term of this Agreement be construed as limiting any claims or defenses that Plaintiffs or Defendants may raise in any other civil action. The Defendants agree that this Agreement may not be used as a defense against any future litigation filed by either of the Plaintiffs that includes claims challenging the SEIS.

5.    Plaintiffs additionally waive any claim they may make for attorney's fees or costs of the litigation in Case Nos. 24-cv-282-SLG and 25-cv-3-SLG, the Parties agree to each bear their attorney's fees and costs of the particular litigation in Case Nos. 24-cv-282-SLG and 25-cv-3-SLG.

6.    Nothing in this Agreement shall constitute, or be interpreted as, a requirement that Defendants are obligated to pay any funds exceeding those available or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341-1342, 1511-1519, or any other applicable appropriations law.

7.     The Parties agree that this Agreement was negotiated in good faith and that this Agreement constitutes a settlement of claims that were denied and disputed by Defendants. By entering into this Agreement, the Parties do not waive any claim or defense. This Agreement is entered into for the sole purpose of settling the claims in Case Nos. 24-cv-282-SLG and 25-cv-3-SLG and will not prejudice or otherwise affect the rights of any party with respect to any other litigation.

8.     The undersigned representatives of each Party certify that they are fully authorized by each and every Party they represent to agree to the terms and conditions of this Agreement and do hereby agree to the terms herein.

Dated this 6th day of July 2026.

ASHBURN & MASON, P.C.

CORI MILLS
ACTING ATTORNEY GENERAL

*/s/ Michael S. Schechter*  (consent)
Matthew T. Findley (AK Bar No. 0504009)
Michael S. Schechter (AK Bar No. 1405044)
1227 W. Ninth Ave., Suite 200
Anchorage, AK 99501
907-276-4331
matt@anchorlaw.com
mike@anchorlaw.com

*/s/ Mary Hunter Gramling*  (consent)
Ronald W. Opsahl
(Alaska Bar No. 2108081)
Mary Hunter Gramling
(Alaska Bar No. 1011078)
Assistant Attorneys General
State of Alaska
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
907-276-3697

*Counsel for Plaintiff AIDEA*

ron.opsahl@alaska.gov
mary.gramling@alaska.gov

Kathleen C. Schroeder (pro hac vice)
Mark Champoux (pro hac vice)
Davis Graham & Stubbs LLP

3400 Walnut St., Suite 700
Denver, CO 80205
(303) 902-9400
katie.schroder@davisgraham.com
mark.champoux@davisgraham.com

*Counsel for Plaintiff State of Alaska*

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Paul A. Turcke*

PAUL A. TURCKE
Idaho Bar No. 4759
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Defendants*

Of Counsel:

LINDSAY CRONIN
Office of the Regional Solicitor
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, AK 99508
907-271-4621
lindsay.cronin@sol.doi.gov